UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JIM M. HAYES,                          )
                                       )
                 Plaintiff,            )
                                       )
          v.                           )          No. 4:09 CV 1464 DDN
                                       )
                                       )
MICHAEL J. ASTRUE,                     )
Commissioner of Social Security,       )
                                       )
                 Defendant.            )


**MEMORANDUM**

This action is before the court for judicial review of the final decision of the defendant Commissioner of Social Security denying the application of plaintiff Jim M. Hayes for disability insurance benefits under Title II of the Social Security Act _et seq._ The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c). (Doc. 11.) For the reasons set forth below, the decision of the Commissioner is affirmed.


**I.  BACKGROUND**

Plaintiff Jim McNail Hayes was born on January 28, 1971. (Tr. 85.) He is 5'11" tall with a weight that has ranged from 213 pounds to 230 pounds. (Tr. 118, 321.) He is married and has three children under the age of eighteen. (Tr. 85-86.) He has a GED and has no vocational training. (Tr. 27.) He last worked on August 15, 2006. (Tr. 119.)

On October 19, 2006, Hayes applied for disability insurance benefits, alleging he became disabled on August 15, 2006, due to disabling pain in his neck and spine following a total hip replacement. (Tr. 30, 85.) He received a notice of disapproved claims on December 21, 2006 (Tr. 46-50.) After a hearing on October 30, 2008, the administrative law judge (ALJ) denied benefits on January 23, 2009. (Tr. 10-43.) On July 17, 2009, the Appeals Council denied Hayes's request for

review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3.)

## II.  MEDICAL HISTORY

On October 25, 1989, May 23, 1991, and January 9, 1992, Hayes saw John Demorlis, M.D., complaining of lower back and tailbone pain.  (Tr. 243-44, 246.)

On August 25, 1995, Roja Balakrishnan, M.D., performed surgery on Hayes to repair an inguinal hernia.[1]  The procedure went according to plan, and Hayes tolerated it well.  (Tr. 295-97.)

On January 4, 1996, Hayes saw Barry Bass, M.D., on account of with swelling and tenderness of the left foot and left ankle.  Dr. Bass diagnosed superficial thrombophlebitis, and recommended Hayes be evaluated for deep vein thrombosis.[2]  (Tr. 294.)

On May 11, 1999, Hayes saw William Allen, M.D., for a surgical consultation relating to his arthritis and painful hip.  Dr. Allen elected to perform a total hip arthoplasty on Hayes.[3]  (Tr. 290.)

On May 17, 1999, a right hip arthoplasty was performed.  There were no complications noted in the discharge summary written by Dr. Allen. Hayes's hospital stay was unremarkable, and he tolerated pain well on morphine.[4]  Hayes was discharged on May 20.  (Tr. 288-89.)

---

[1]A hernia is the protrusion of a part or structure through the tissues normally containing it.  Stedman's Medical Dictionary, 707 (25th ed., Williams & Wilkins 1990).

[2]Thrombophlebitis is inflammation of the veins with clotting. Stedman's Medical Dictionary, 1596-97.  Thrombosis is clotting within a blood vessel which may cause a loss of blood to the tissues supplied by the vessel.  Stedman's Medical Dictionary, 779, 1597.

[3]arthoplasty is an operation to restore as far as possible the integrity and functional power of a joint.  Stedman's Medical Dictionary, 136.

[4]Morphine is a drug with a narcotic component, used to treat moderate to severe pain.  Source: WebMD, http://www.webmd.com/drugs (last visited July 22, 2010).

On July 20, 1999, Hayes saw Dr. Allen for a follow-up visit for his hip arthoplasty. Dr. Allen described Hayes as "very happy and pain free," and "getting along well." (Tr. 286.)

On August 31, 2000, Hayes saw Dr. Demorlis. Hayes complained of feeling like his back is out of place. Dr. Demorlis recommended Hayes see a chiropractor for care. (Tr. 226.)

On November 1, 2000, Hayes saw Dr. Allen for a follow-up visit. Hayes complained of intermittent pain in his right thigh. Dr. Allen believed that this does not look like pain from the joint itself. On physical examination, Hayes's range of motion was good, and he displayed no pain behaviors during range of motion tests. Dr. Allen also noted that his x-rays looked "good." He gave Hayes a prescription for prescription-strength Tylenol.[5] (Tr. 285.)

On March 5, 2001, Hayes saw Dr. Demorlis. He complained of increased pain when the weather changes. Dr. Demorlis recommended he take additional doses of Tylenol. (Id.)

On November 23, 2001, x-rays were taken of Hayes's cervical and thoracic spine.[6] Qasim Bajwa, M.D., interpreted the x-rays. His cervical spine showed normal alignment without evidence of fracture, dislocation, or interspace narrowing. However, it did show loss of normal cervical curve, as well as muscle spasms. Examination of Hayes's thoracic spine showed normal alignment with no evidence of fracture, dislocation, or interspace narrowing. (Tr. 274.)

---

[5]Dr. Allen also gave Hayes a prescription for Keflex at this visit. However, Keflex is used to treat a wide variety of bacterial infections, and is not relevant to Hayes's pain-based complaints. Source: Webmd, http://www.webmd.com/drugs (Last visited July 22, 2010).

[6]The human spinal column consists of thirty-three vertebrae. There are seven cervical vertebrae (denoted C1-C7), twelve thoracic vertebrae (denoted T1-T12), five lumbar vertebrae (denoted L1-L5), five sacral vertebrae (denoted S1-S5 and fused together into one bone, the sacrum), and four coccygeal vertebrae (fused together into one bone, the coccyx). The cervical vertebrae form part of the neck, while the lumbar vertebrae form part of the lower back. The sacrum is immediately below the lumbar vertebrae. Stedman's Medical Dictionary, 226, 831, 1376, 1549, 1710, Plate 2.

On October 21, 2002, and December 10, 2002, Hayes saw Dr. Demorlis, complaining of a sore throat and pain in his jaw. (Tr. 222.)

On January 14, 2003, Hayes saw Dr. Allen for a follow-up examination. Dr. Allen noted that his hip looked good on x-rays, and Hayes had "no complaints." However, in the next sentence, Dr. Allen noted that Hayes did complain of his left hip, which Dr. Allen did not operate on. (Tr. 283.)

On April 2, 2003, Hayes saw Dr. Demorlis. Hayes complained of continued back pain. In addition, Hayes reported that he had been to the chiropractor twice with no positive effect. (Tr. 220.)

On July 21, 2003, William Cottingham, D.O., performed a duplex scan of Hayes's leg. The scans showed no evidence of venous thrombosis. (Tr. 280.)

On August 28, 2003, and September 15, 2003, Hayes saw Dr. Demorlis. Hays complained of continued back pain. On both occasions, Dr. Demorlis prescribed Soma and Vicodin.[7] (Tr. 218.)

On December 1, 2003, Hayes saw Dr. Demorlis. He complained that his back was "out again," and expressed a desire for additional pain medications and muscle relaxants. Dr. Demorlis prescribed Darvocet.[8] (Tr. 217.)

On February 25, 2004, Hayes saw Dr. Demorlis, complaining of general pain. Dr. Demorlis quoted him as saying that "just about every joint in [Hayes's] body hurts." Hayes also complained of fatigue and inability to sleep. (Tr. 216.)

---

[7]Soma is used to treat pain and discomfort. Vicodin is a combination narcotic and non-narcotic, and is used to relieve moderate to severe pain. WebMD, http://www.webmd.com/drugs (last visited July 22, 2010).

[8]Darvocet is a combination narcotic and non-narcotic, and is used to relieve mild to moderate pain. WebMD, http://www.webmd.com/drugs (last visited July 22, 2010).

On April 17, 2006, Hayes saw Dr. Demorlis, complaining of pressure on the left side of his face. Dr. Demorlis diagnosed sinusitis and prescribed Ketek.[9] (Tr. 212.)

On May 31, 2006, Hayes went into the emergency room. The nursing record indicated that Hayes was suffering from sharp, stabbing pain in his left flank. He was alert and oriented x3. He reported pain similar to what he suffered when he had kidney stones. He was given Demerol to treat the pain.[10] X-rays reviewed by Dr. Bajwa showed the presence of a large calculus and a tiny calculus, both in Hayes's kidney.[11] He was discharged at that time. (Tr. 195-200.)

On June 5, 2006, Hayes went into the emergency room. The nursing record again indicated that he was suffering from stabbing pain in his left flank. He was alert and oriented x3. He was once again given Demerol for his pain and discharged. (Tr. 189-90.)

On July 22, 2006, Hayes returned to the emergency room with identical symptoms. He was again administered drugs for his pain. An x-ray reviewed by Dr. Bajwa showed no opaque calculus. (Tr. 185-87.)

On August 1, 2006, Hayes went into the emergency room complaining of similar symptoms. He was given drugs for his pain and discharged. A CT scan reviewed by Dr. Bajwa showed multiple small kidney calculi as well as a larger kidney calculus. (Tr. 177-81.)

On August 8, 2006, Hayes went to Dr. Allen for a follow-up visit on his hip arthoplasty. Hayes complained of pain in both his hips, lower back, and of generalized stiffness. X-rays showed that both his left (original) and right hip (which was replaced) looked "good." On physical examination, Hayes was asked to demonstrate his range of motion and gait. Dr. Allen opined that he did "reasonably well" with both. (Tr. 166-167.)

---

[9]Ketek is an antibiotic. WebMD, http://www.webmd.com/drugs (last accessed July 22, 2010).

[10]Demerol is the brand name of Meperidine, a medication used to treat moderate to severe pain. WebMD, http://www.webmd.com/drugs (last accessed July 22, 2010).

[11]A calculus, or stone, is a concretion formed in the body, usually composed of salts of inorganic or organic acids, or of other material such as cholesterol. Stedman's Medical Dictionary, 229.

In addition, Joshua Ball, M.D., reviewed the x-rays and found "mild" degenerative change of the left hip with joint space narrowing. He also found "mild" rotatory scoliosis of the lower lumbar spine. (Tr. 170.)

On August 16, 2006, Hayes saw Dr. Demorlis, complaining of pain in his right hip, and pain when walking. Dr. Demorlis placed him on medical leave for ninety days. (Tr. 211.)

On September 6, 2006, Hayes saw Dr. Demorlis, complaining of continued back pain. Dr. Demorlis observed that Hayes walked with a cane. He diagnosed chronic right hip pain due to degenerative joint disease. (Tr. 210.)

On September 19, 2006, Hayes saw Dr. Demorlis, complaining of left groin pain and nausea. Dr. Demorlis recommended further testing. (Tr. 208.)

On September 22, 2006, Dr. Bajwa performed an x-ray. It showed several calculi, but no other abnormalities. (Tr. 204.)

On October 16, 2006, Hayes saw Dr. Demorlis. Hayes reported that the pain had improved somewhat, but he still had difficulty getting in and out of chairs. In addition, Hayes reported he was unable to sit for long periods of time. De. Demorlis believed the cause of the pain was possibly cement disease or polyethylene disease. (Tr. 207.)

On October 19, 2006, a disability report was filed by R. Martin, a medical consultant.[12] Martin observed that Hayes had difficulty answering, sitting, standing, and walking. Specifically, he noted that Hayes rose slowly, used a cane to push himself up and walk, and frequently changed positions during the interview. (Tr. 115-17.)

On November 5, 2006, Hayes completed a disability report on his own behalf. (Tr. 126-33.) In that report, he summarized an average day. He reported waking at 6:30 a.m., showering, dressing, and driving his children to and from school. He put the dishes away, and spend most of the day watching television or taking short walks. He also reported that he has to take prescription strength drugs in order to get to sleep, and wakes up frequently to change positions. He reported that he has difficulty putting shoes and socks on, as well as lowering himself into

---

[12]It is unclear what qualifications Martin held.

a seat.  He reports that while he used to barbeque for his family, his wife now prepares all of their meals.  He reported self-motivation for any tasks completed around the home.  He reported being restricted to only lifting ten to fifteen pounds without repetition, and suffering from a limited range of motion.  Finally, he noted his limited ability to remain in one position for a length of time longer than ten to fifteen minutes.  (Tr. 126-33.)

On December 21, 2006, J. Vale, Medical Consultant, performed a RFC assessment.  Vale found that Hayes had some exertional limitations, specifically that he could: occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk at least two hours in an eight-hour workday, sit (with normal breaks) for a total of about six hours in an eight-hour workday, and could not push or pull with his lower extremities.  He specifically noted Hayes could not sit for extended periods, and had difficulty getting into and out of a chair. Vale found that Hayes could occasionally climb ramps or stairs, steep, or kneel, but never climb ladders, ropes, or scaffolds, crouch, or crawl. Vale did not note any manipulative, visual, or communicative limitation. Vale placed minimal environmental limitations on Hayes, finding only that he should avoid even moderate exposure of vibration or hazards such as machinery or heights.  (Tr. 298-303.)

On November 20, 2007, Hayes saw Barbie Fulton, Nurse Practitioner, a pain management specialist.  Nurse Fulton noted that Hayes's range of motion was normal.  Hayes complained of pain with palpation of the back, and pain accompanying movement, specifically between his shoulders. Hayes also complained of right hip pain, as well as minimal low back pain and occasional right thigh pain.  Nurse Fulton diagnosed radiculopathy, thoracic pain, and right sacroiliitis.  She prescribed Vicodin.  Nurse Fulton noted that Hayes was alert and oriented x 3 with no obvious signs of psychosis or mental defects.  (Tr. 304-06.)

On February 25, 2008, Hayes saw Joanne Mace, M.D, for an evaluation of his ability to work.  He reported that the two hour drive to her office increased his pain significantly.  Dr. Mace also noted his diagnosis of two herniated discs and two levels of degenerative disc disease.  Dr. Mace recommended diagnostic imaging to rule of a herniated

disc and other disease of the spine. Finally, she opined that Hayes's medical condition precluded the ability to work, likely on a permanent basis. (Tr. 321-22.)

On February 29, 2008, Hayes saw Thomas Spencer, Psy. D., for a psychological evaluation. Hayes's chief complaint was that "[he] had a total hip replacement about eight years ago and it wore out." Hayes said that he is prescribed Cymbalta for depression, but was currently not taking it. He further described the onset of depression concurring with his deteriorating health. Hayes noted a sense of hopelessness, helplessness, and worthlessness. Dr. Spencer noted that Hayes had never seen a psychiatrist or psychologist, had never had inpatient psychiatric treatment, and had no known family history of mental illness. Dr. Spencer noted a neutral affect, intact and organized thought flow, no delusional beliefs, good memory, and was able to perform a variety of attention/concentration, proverb, and calculation tests. Dr. Spencer diagnosed recurrent moderate major depressive disorder and assigned a GAF of 50-55.[13] Dr. Spencer opined that Hayes's mental disability precludes his ability to consistently engage in suitable employment for his age, and that this disability "could be" twelve months or longer. (Tr. 315-19.)

On June 19, 2008, and July 28, 2008, Hayes saw Glenn Kunkel, M.D., for a selective nerve root block to treat his pain symptoms. The procedures went as planned with no complications. There was no note about the effectiveness of the procedures. (Tr. 311-14.)

On August 25, 2008, Hayes saw Dr. Kunkel for a thoracic facet injection to treat Hayes's pain between his shoulders. (Tr. 307-08.)

---

[13]A GAF score, short for Global Assessment of Functioning, helps summarize a patient's overall ability to function. A GAF score has two components. The first component covers symptom severity and the second component covers functioning. A patient's GAF score represents the worst of the two components.

On the GAF scale, a score from 51 to 60 represents moderate symptoms (such as flat affect and circumstantial speech, occasional panic attacks), or moderate difficulty in social, occupational, or school functioning (such as few friends, conflicts with peers or co-workers). Diagnostic and Statistical Manual of Mental Disorders, 32-34 (4th ed., American Psychiatric Association 2000).

**Testimony at the Hearing**

The ALJ held a hearing on October 30, 2008. (Tr. 24.) Hayes testified that he lived with his wife and three children, then aged five, eight, and twelve. He had a GED, but testified he did not have any other vocational training. (Tr. 27.)

Hayes testified that he was a laborer for Salem Wood Products from 1997 to 2005. While there, he lifted stave bolts, and moved and sawed logs. After 2005, he started to work for Wal-Mart, where he was a sales associate. He stocked shelves, and would assist unloading trucks if necessary. He stopped working in 2007. (Tr. 28.)

Hayes's counsel stated that Hayes suffered from lower back pain, along with shooting pain up his spine and neck.[14] Hayes's counsel also stated that Hayes has been diagnosed with depression, but admitted that he did not intend to pursue a mental impairment. (Tr. 31.)

Hayes testified that he stopped working because he started having severe back and hip pain, and that no doctor was able to provide effective treatment. (Tr. 33.)

Hayes testified that he dressed and helped his children get ready for school on a daily basis. He testified that he had trouble with dressing. Specifically, he used an assistive device to put socks on, and he wore overalls because they were easier to get on. During the day, he did little except "move around" and try to make himself more comfortable. He also cleared the dishes off the table, and made his own lunch. He was unable to play with his children as a result of his pain. He testified that he did not sleep well because of his pain. (Tr. 36-37, 39.)

Hayes testified that he could not lift anything about ten pounds. Further, he testified that he was unable to sit or stand for long periods of time, and had to go back and forth frequently between the two positions to be somewhat comfortable. (Tr. 38.)

---

[14]Hayes's counsel at the hearing was Philip Ortman. However, Ortman withdrew as counsel for Hayes on March 19, 2009. (Tr. 5.) In his place, Karen Bill was retained as counsel on March 18, 2009. (Tr. 9.) Ms. Bill has been counsel since this suit was initiated. (Tr. 1.)

The ALJ did not call a vocational expert for testimony at the hearing. (Tr. 24-43.)

### III. DECISION OF THE ALJ

The ALJ found that Hayes did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15.)

Next, the ALJ formulated Hayes's residual functional capacity. She found that Hayes retained the RFC to perform the full range of sedentary work. (Tr. 16.) Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, some standing or walking is occasionally required. 20 C.F.R. § 404.1567(a).

The ALJ noted Hayes's allegations that he could not walk indefinitely, could not bend over at all, and could not climb ladders or stairs. He also alleged that the longer he sits or stands the more pain he experiences in his pelvic region. (Tr. 17.)

The ALJ noted that the medical record is limited in this case. (Tr. 18.) Specifically, she did not find medical evidence in the record supporting his assertion that he received injections at UMC to treat his pain, despite the fact that the records from other hospitals refer to the injection. (Tr. 19.) The ALJ noted that the burden is on the claimant to provide medical evidence of his impairments. 20 C.F.R. § 404.1512(a). Moreover, the ALJ assumed that the applicant made his strongest case, since he was represented by counsel, citing <u>Glenn. v. Secretary of Health and Human Services</u>, 814 F.2d 387, 391 (7th Cir. 1987). (<u>Id.</u>)

The ALJ found that, although Hayes had visited the emergency room several times, the visits were because of kidney stones, which does not result in significant limitations of function for twelve consecutive months. (Tr. 19.)

The ALJ found that Hayes did not seek consistent treatment, specifically noting the year long gap in treatment records between October 2006 and November 2007. (Tr. 20.) A lack of regular and

sustained treatment undermines a claimant's subjective allegations of pain. See <u>Novotny v. Chater</u>, 72 F.3d 669, 671 (8th Cir. 1995.)

The ALJ next considered the medical opinion of Dr. Mace. Dr. Mace opined that Hayes's medication conditions precluded the ability to work. The ALJ discounted Dr. Mace's opinion on the basis that it was based on subjective allegations rather than substantial evidence. The ALJ noted that Dr. Mace stated the conclusion without the recommended diagnostic imaging, radiographs, MRIs or referral to a musculoskeletal specialist. The ALJ also discounted the conclusion that Hayes was disabled, since that finding is reserved for the Commissioner. (Tr. 20.)

Next, the ALJ considered the psychological evaluation completed by Dr. Spencer. Dr. Spencer's opinion was that Hayes had a medical disability that prevents him from working. The ALJ discounted Dr. Spencer's opinion, finding that "it is not supported by the doctor's own records of the examination and is for the purpose of a favorable decision." (Tr. 20-21.) The ALJ also noted that Hayes has not required psychiatric hospitalization or treatment by a psychiatrist, psychologist, or mental health counselor. He did not demonstrate that his social functioning, activities of daily living, concentration, persistence, or pace were more than mildly impaired by any mental impairment. As a result of a mental impairment, Hayes did not experience repeated episodes of decompensation of extended duration. The ALJ noted that the mere presence of a mental impairment does not constitute a severe limitation of a claimant's work abilities. See 20 C.F.R. § 404.1521. (Tr. 21.)

The ALJ also discounted the opinions of Dr. Mace and Dr. Spencer because they each saw the claimant only one time, and gave conclusions which were inconsistent with their evaluations. (<u>Id.</u>)

The ALJ gave considerable weight to the whole record, including the following facts. There was no documentation that any treating physician had ever found or imposed any long term, significant mental or physical limitations on Hayes. There was no evidence that Hayes required prolonged hospitalizations since the alleged onset date. The ALJ found no reason why Hayes could not lift and carry up to ten pounds and sit and/or stand throughout an eight-hour workday. (<u>Id.</u>)

The ALJ reiterated her role as the individual who determines whether allegations of pain, such as Hayes's are credible. She then found that while Hayes does suffer from some of the alleged symptoms, his "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 22.)

Finding that Hayes could perform the full range of sedentary work, the ALJ relied upon the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, to determine that Hayes is not disabled. (Tr. 23.)

## IV.  GENERAL LEGAL PRINCIPLES

The court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's findings comply with the relevant legal requirements and is supported by substantial evidence in the record as a whole. <u>Pate-Fires v. Astrue</u>, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." <u>Id.</u> In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. <u>Id.</u> As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See <u>Krogmeier v. Barnhart</u>, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove he is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. §§ 423(a)(1)(D), (d)(1)(A); <u>Pate-Fires</u>, 564 F.3d at 942. A five-step regulatory framework is used to determine whether an individual qualifies for disability. 20 C.F.R. §§ 404.1520(a)(4); <u>see also</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42 (1987) (describing the five-step process); <u>Pate-Fires</u>, 564 F.3d at 942.

Steps One through Three require the claimant to prove (1) he is not currently engaged in substantial gainful activity, (2) he suffers from a severe impairment, and (3) his disability meets or equals a listed impairment. <u>Pate-Fires</u>, 564 F.3d at 942. If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five. <u>Id.</u> Step Four requires the Commissioner to consider whether the claimant retains the RFC to perform past relevant work. <u>Id.</u> The claimant bears the burden of demonstrating he is no longer able to return to his past relevant work. <u>Id.</u> If the Commissioner determines the claimant cannot return to past relevant work, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work. <u>Id.</u>

In this case, the Commissioner determined that Hayes could not perform his past work, but that he maintained the RFC to perform the full range of sedentary work in the national economy.

## V. DISCUSSION

Hayes argues the ALJ's decision is flawed in several respects. First, Hayes argues that the ALJ erred in finding his testimony not credible. Second, he argues the ALJ improperly gave little weight to the opinions of Dr. Mace and Dr. Spencer. Finally, he argues the ALJ should have obtained evidence from a vocational expert (VE) in formulating his opinion.

### Credibility of Hayes

Hayes argues that the ALJ erred in assessing his credibility at the hearing. Specifically, he argues that the ALJ gave insufficient consideration to the factors in Social Security Ruling 96-7p.

The ALJ must consider a claimant's subjective complaints. <u>Casey v. Astrue</u>, 503 F.3d 687, 695 (8th Cir. 2007) (citing <u>Polaski v. Heckler</u>, 739 F.2d 1320, 1322 (8th Cir. 1984)). Credibility questions concerning a claimant's subjective testimony are "primarily for the ALJ to decide, not the courts." <u>See</u> <u>Baldwin v. Barnhart</u>, 349 F.3d 549, 558 (8th Cir. 2003). If an ALJ discredits a claimant's testimony, they must do so explicitly. <u>Caviness v. Massanari</u>, 250 F.3d 603, 605 (8th Cir. 2001).

Social Security Ruling 96-7p provides that the ALJ must consider all of the evidence in the record when evaluating credibility, such as medical signs and laboratory findings; diagnosis, prognosis, and other medical opinions provided by treating or examining medical sources; and statements and reports from the individual and from treating or examining medical sources. In addition to consideration of this evidence, the ALJ must consider the Polaski factors. Guilliams v. Barnhart, 393 F.3d 798, 802 (8th Cir. 2005). These factors include the claimant's work record and observations by third parties and treating and examining physicians regarding: 1) the claimant's prior work history; 2) the claimant's daily activities; 3) the duration, frequency, and intensity of the claimant's pain; 4) precipitating and aggravating factors; 5) dosage, effectiveness, and side effects of medication; and 6) functional restrictions. Id. While these factors must be taken into account, the ALJ does not need to recite and discuss each of the Polaski factors in making a credibility determination. Casey v. Astrue, 503 F.3d 687, 695 (8th Cir. 2007).

Here, the ALJ explicitly discredited Hayes's subjective complaints concerning the intensity, persistence, and limiting effects of his pain to the extent they precluded sedentary work. (Tr. 22.) The ALJ set out the Polaski factors in her decision, and addressed several of the factors in discounting Hayes's subjective complaints. (Tr. 17.)

The ALJ noted that no treating physician has ever found or imposed any long term, significant and adverse mental or physical limitations on Hayes. (Tr. 21.) A lack of restrictions imposed by treating physicians is inconsistent with allegations of disabling pain. See Brown v. Chater, 87 F.3d 963, 965 (8th Cir. 1996). Moreover, the ALJ was proper in imputing this inconsistency to Hayes's credibility. "Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility." Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001). Second, The ALJ noted Hayes's daily activities included driving his children to and from school, doing dishes, and taking short walks. Activities such as these are inconsistent with subjective complaints of disabling pain. Medhaug v. Astrue, 578 F.3d 805, 817 (8th Cir. 2009). Third, Vale's RFC assessment contradicts a finding of disability. An ALJ may rely on a non-examining opinion if other options

are properly discredited.  See <u>Tindell v. Barnhart</u>, 444 F.3d 1002, 1005 (8th Cir. 2006).  As set forth below, the medical opinions of Dr. Mace and Dr. Spencer were properly discredited.

The ALJ also noted that Hayes continued to work as a sales associate for Wal-Mart during part of 2007.  (Tr. 17.)  Part of this job involved unloading trucks.  (Tr. 28.)  Hayes failed to cite any specific change in his condition that led him to quit his job.  When asked what incidents occurred that put him in a position where he could no longer work, Hayes responded that he started having severe back pain.  (Tr. 33.)  However, no objective medical evidence in the record supports such a worsening of condition.  On the contrary, Hayes did not see a doctor until June of 2008, when he saw Dr. Kunkel for a pain treatment procedure.  (Tr. 313-14.)  The only medical evidence after that shows two more pain treatment procedures.  (Tr. 307-08, 311-12.)  The record from these visits contain no objective medical evidence about Hayes's pain; rather, they simply document treatment for his complaints.  When an individual has previously worked with an impairment, it cannot be considered disabling at present.  See <u>Orrick v. Sullivan</u>, 966 F.2d 368, 370 (8th Cir. 1992).  Therefore, Hayes's ability to perform work for Wal-Mart is inconsistent with his claims of disabling pain.

Hayes argues that the only reason the ALJ discounted Hayes's subjective complaints was his failure to seek consistent or current treatment.  The undersigned disagrees.

First, as explained above, the ALJ explored several inconsistencies in the record that allowed him to find Hayes not completely credible.  Even if the ALJ improperly discounted Hayes's subjective complaints for this purpose, substantial evidence supports discounting them for other reasons.  Hayes did not seek medical care from October 2006 to November 2007.  (Tr. 207, 304.)  An ALJ may properly discount a claimant's credibility based on a failure to pursue regular medical treatment.  <u>Edwards v. Barnhart</u>, 314 F.3d 964, 967 (8th Cir. 2003).  Therefore, the ALJ's finding that Hayes "perceived his impairment as not bad enough to warrant regular medical treatment" was permissible.  (Tr. 20).  Hayes argues that "various treatment notes" show that he was experiencing

economic problems and could not afford treatment. (Doc. 24 at 15.) However, he cites no evidence in the record to support this.

Hayes finally notes that treatment was delayed because of "other medical evaluations and rheumatology." (Id., Tr. 308). However, this does not excuse the lack of evidence in the record of medical treatment during that time. Social Security regulations place the burden on the claimant to bring everything that shows he is disabled to the ALJ's attention. 20 C.F.R. § 404.1512(a). Hayes further argues that the ALJ has a duty to fully and fairly develop the record, even where the claimant is represented by counsel. Warner v. Heckler, 722 F.2d 428, 431 (8th Cir. 1983). An ALJ is required to issue orders to further develop the record only if the medical records presented do not give sufficient medical evidence to determine whether the claimant is disabled. Barrett v. Shalala, 38 F.3d 1019, 1023 (8th Cir. 1994). Here, the ALJ accepted the Hayes's diagnosis and rejected only his subjective allegations about the intensity, persistence, and limiting effects of his symptoms. (Tr. 22.) An order to develop the record further is not necessary in such a case. Barrett, 38 F.3d at 1023. In addition, the inconsistencies throughout the record provided the ALJ with sufficient medical evidence to determine the validity of Hayes's subjective complaints of pain.

Given the substantial evidence in the record that were inconsistent with allegations of disabling pain, the ALJ did not err in failing to completely accept Hayes's allegations.

**Weight Given to Dr. Mace and Dr. Spencer**

Hayes argues the ALJ erred in giving little weight to the opinions of the examining medical sources, Dr. Mace and Dr. Spencer. Hayes argues that the ALJ gave inadequate rationale for her findings. The undersigned disagrees.

The ALJ has the role of resolving conflicts among the opinions of various treating and examining physicians. Pearsall v. Massanari, 274 F.3d 1211, 1219 (8th Cir. 2001). The ALJ may reject the conclusion of any medical expert, treating or examining, if they are inconsistent with the record as a whole. Id. The opinion of a treating physician is generally entitled to controlling weight. Medhaug v. Astrue, 578 F.3d

805, 815 (8th Cir. 2009).  Treating physicians' opinions are generally entitled to greater weight than opinions of consultative examiners, which generally receive greater weight than opinions of non-examining physicians.  See 20 C.F.R. § 404.1527(d).

Hayes argues that the ALJ improperly gave the opinion of Dr. Mace little weight.  In support of this argument, Hayes lists reasons why Dr. Mace's opinion could have been granted more weight.  However, there is substantial evidence supporting the ALJ's decision to give Dr. Mace's opinion little weight.  It is the ALJ's role to determine the weight given to the various medical sources.  Pearsall, 274 F.3d at 1219.  Moreover, this court will not reverse the decision of an ALJ just because the evidence could support the opposite conclusion. See Krogmeier, 294 F.3d at 1022.

Hayes argues that Dr. Mace's diagnoses are not inconsistent with other evidence in the record.  To the extent that Dr. Mace diagnosed various impairments Hayes suffers from, this is correct.  However, the mere presence of an impairment, absent disabling effects, is not sufficient to qualify a claimant for Social Security Disability benefits. See Barnhart v. Walton, 535 U.S. 212, 217 (2002).  Hayes also argues that Dr. Mace's opinion of disability is not contradicted in the record. First, as discussed above, the Polaski factors in the record are inconsistent with a finding of disability.  Second, Vale's RFC assessment is inconsistent with Dr. Mace's finding of disability.  (Tr. 298-03.) Finally, Dr. Mace's conclusion that Hayes is disabled or unable to work does not carry any special significance, since it is the province of the Commissioner to make the ultimate determination of disability.  20 C.F.R. § 416.927(e)(1), (3); Davidson v. Astrue, 578 F.3d 838, 842 (8th Cir. 2009).

Other factors also supported discounting the opinion of Dr. Mace. First, the record indicates that Dr. Mace met with Hayes only once.  A medical opinion can be granted less weight when the physician does not have a treatment history with the claimant.  See Randolph v. Barnhart, 386 F.3d 835, 840 (8th Cir. 2004).  Moreover, Dr. Mace apparently did not have access to the best diagnostic information available, given that she

recommended further diagnostic imaging. (Tr. 322.) This supports the ALJ's decision to not grant Dr. Mace's opinion more weight.

Hayes next argues that Dr. Spencer's opinion was improperly given little weight. Dr. Spencer found that Hayes was disabled due to depression, but his conclusion of disability carries no special weight. Davidson, 578 F.3d at 842. In addition, there is no evidence that Hayes deteriorated or decompensated in a work or work-like situation. See Rose v. Apfel, 181 F.3d 943, 945 (8th Cir. 1999) (finding the absence of certain facts to support a finding of no disability). These are also no evidence that Hayes's daily activities were limited or restricted by any mental condition. Id. No medical professional hospitalized Hayes. Id. While Dr. Spencer opined that Hayes was disabled for all work, he failed to articulate any specific limitations. Id. In his assessment, Dr. Spencer noted that Hayes was not taking his Cymbalta. (Tr. 315.) A claimant's non-compliance with treatment constitutes evidence that is inconsistent with a medical opinion of disability. See Owen v. Astrue, 551 F.3d 792, 800 (8th Cir. 2008). Finally, Dr. Spencer's conclusion of disability was conclusory, as there was no analysis given between the tests administered and his determination of incapacity. (Tr. 318-19.) A conclusory diagnosis does not overcome substantial evidence to the contrary. See Browning v. Sullivan, 958 F.2d 817, 823 (8th Cir. 1992). The evidence supporting a finding of not disabled articulated above constitutes substantial evidence.

Hayes notes that Dr. Spencer's opinions were not contradicted anywhere within the record. First, the evidence discussed above constitutes evidence inconsistent with Dr. Spencer's opinion. Moreover, because Dr. Spencer was not a treating physician, his opinion was not entitled to controlling weight. See 20 C.F.R. § 404.1527(d). Therefore, the fact that there was no evidence directly contradicting Dr. Spencer's findings is irrelevant. This is especially true given Hayes's limited psychological treatment history. For these reasons, the ALJ properly discounted the medical opinion of Dr. Spencer.

Hayes argues that the ALJ should have contacted Dr. Mace or Dr. Spencer for clarification. Hayes argues in the alternative that the ALJ should have obtained testimony from a medical advisor at the hearing.

However, the regulation cited by Hayes defeats his argument.  An ALJ is only under an obligation to contact medical sources if the information in the record is "inadequate for [the ALJ] to determine whether [the claimant] is disabled."  20 C.F.R. § 404.1512(e).  Here, the ALJ had sufficient information in the record to find, by substantial evidence discussed above, that the medical opinions of Dr. Mace and Dr. Spencer were unreliable.  Once an ALJ makes a decision not to grant substantial weight to a physician, the ALJ has no duty to contact that physician.  <u>Samons v. Astrue</u>, 497 F.3d 813 (8th Cir. 2007).

Because there was evidence in the record inconsistent with the opinions of Dr. Mace and Dr. Spencer, the ALJ properly fulfilled his role of weighing the medical evidence in the record.

**Failure to Obtain VE Testimony**

Hayes last argues that the ALJ's finding that there were jobs in the national economy that Hayes could perform was not supported by substantial evidence, since she did not obtain evidence from VE.  Hayes contends that the ALJ erroneously relied upon the Medical-Vocational Guidelines.  20 C.F.R. § 404, Subpart P, Appendix 2.

Once the claimant has shown that he cannot do his past work, the burden shifts to the ALJ to show that the claimant can perform other work.  <u>Smith v. Shalala</u>, 46 F.3d 45, 47 (8th Cir. 1995).  In determining whether there are jobs available that a claimant can perform, the ALJ must consider the claimant's exertional and nonexertional impairments, together with the claimant's age, education, and previous work experience."  <u>Talbott v. Bowen</u>, 821 F.2d 511, 515 (8th Cir. 1987).  If the claimant's characteristics do not differ significantly from those contemplated in the Medical-Vocational Guidelines, the ALJ may rely on the Guidelines alone to direct a finding of disabled or not disabled.  <u>Lucy v. Chater</u>, 113 F.3d 905, 908 (8th Cir. 1997).  In other words, " an ALJ may use the Guidelines even though there is a nonexertional impairment if the ALJ finds, and the record supports the finding, that the nonexertional impairment does not diminish the claimant's residual functional capacity to perform the full range of activities listed in the Guidelines."  <u>Id.</u>  If the claimant suffers from a nonexertional

impairment that limits his ability to do the full range of work in one of the specific categories set forth by the guidelines, the ALJ's burden can only be met through the testimony of a VE. <u>Nesselrotte v. Sullivan</u>, 939 F.2d 596, 598 (8th Cir. 1991).

The ALJ found that Hayes retained the functional capacity to do the full range of sedentary work.[15] (Tr. 16.) This is supported in the record by consistent reports by Dr. Allen, a doctor who treated Hayes following his hip arthoplasty, that Hayes's range of motion is not significantly limited. (Tr. 167, 285.) This is corroborated by Nurse Fulton, who described Hayes's range of motion as "normal." (Tr. 305.) Because Hayes maintained the ability to do the full range of sedentary work, the ALJ was justified in using the Guidelines to conclude Hayes was not disabled.

Hayes argues that the nature of his limitations is such that the Guidelines are not appropriate, specifically alleging that he suffered from pain due to a variety of impairments, as well as depression. However, as discussed above, the ALJ properly concluded that Hayes's pain and depression symptoms were not disabling. While both Dr. Mace and Dr. Spencer opined that Hayes suffered from nonexertional limitations, the ALJ's decision to discount their opinions was supported by substantial evidence. Because the ALJ properly found that Hayes retains the ability to perform the full range of sedentary work, her use of the Guidelines was proper. Impairments stemming from pain and depression limiting to a claimant to sedentary work do not preclude the use of the Guidelines

---

[15]The ALJ did not place any environmental limitations on Hayes. (Tr. 16, 23.) This is not supported by substantial evidence, as the only evidence that speaks to environmental limitations, the medical evaluation by Vale, indicates Hayes should avoid moderate exposure to vibration or hazardous environments. (Tr. 302.) However, Hayes does not raise this point. Moreover, SSR 96-9p states that "few occupations" in the sedentary category of work would expose Hayes to these sorts of environmental hazards. SSR 96-9p, at *9. Therefore, the ALJ's error is harmless. <u>See</u>, <u>e.g.</u>, <u>Greene v. Sullivan</u>, 923 F.2d 99, 101 (8th Cir. 1991) (indicating that harmless error is a possibility in an ALJ decision); <u>Stout v. Commissioner, Social Sec. Admin.</u>, 454 F.3d 1050, 1055 (9th Cir. 2006) (applying harmless error where "the mistake was...irrelevant to the ALJ's ultimate disability conclusion").

to determine whether the claimant is disabled.  See Hensley v. Barnhart, 352 F.3d 353, 356 (8th Cir. 2003).

Finally, Hayes argues the ALJ ignored objective medical evidence and Hayes's own complaints in formulating the RFC and failed to set forth a logical explanation of the effects of Hayes's impairments on his ability to work.  These elements are required by SSR 96-8p.

Hayes specifically alleges the ALJ ignored evidence showing depression and pain submitted by Barbie Fulton, Dr. Spencer, Dr. Demorlis, and Dr. Allen.  However, the ALJ specifically addresses the treatment by these individuals.  (Tr. 18-19.)  As discussed above, the ALJ's decision to not grant Dr. Spencer's opinion much weight was supported by substantial evidence.  Finally, the evidence contained in the records of the other physicians was granted weight by the ALJ, but only to the extent that it prevented Hayes from doing more than sedentary work.  (Tr. 22.)  As discussed above, there is substantial evidence supporting this determination.  The ALJ's decision to not grant much weight to Hayes's subjective complaints was also supported by substantial evidence.  Contrary to Hayes's argument, the ALJ set forth a logical explanation of his symptoms effect on his ability to work.  The ALJ noted that the symptoms could reasonably be expected to limit Hayes to sedentary work.  (Tr. 22.)  However, she did not find the allegations of disabling symptoms credible.

## VI.  CONCLUSION

For the reasons set forth above, the decision of the Commissioner of Social Security is affirmed.  An appropriate Judgment Order is issued herewith.


                                    /S/    David D. Noce
                              **UNITED STATES MAGISTRATE JUDGE**


Signed on January 24, 2011.